UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARK GUIDROZ & ASHLEY GUIDROZ ) | No.: |
| Plaintiffs ) | Civil Action |
| ) | |
| versus ) | Section |
| ) | Judge |
| HMO LOUISIANA, INC. ) | |
| Defendant ) | Magistrate Division |
| ) | Magistrate Judge |

# COMPLAINT

NOW COME, through undersigned counsel, Plaintiffs, Mark Guidroz and Ashley Guidroz, who for their Complaint respectfully aver:

## Introduction

1.

This is a claim by Plaintiffs for health insurance benefits due under the terms of an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").

## The Parties

2.

Plaintiffs, Mark Guidroz and Ashley Guidroz, are persons of the full age of majority and residents of the Parish of Orleans, State of Louisiana.

3.

Named Defendant is HMO Louisiana, Inc. (d/b/a Blue Cross Blue Shield of Louisiana), a Louisiana corporation with its principal place of business in Baton Rouge, Louisiana. At all material times HMO Louisiana, Inc. provided insurance coverage to Plaintiffs under Group Policy No. 32H60ERC (the Plan). The Plan provides medical insurance coverage and benefits to

1

eligible employees of Pixel Displays, LLC, and to other qualified members and dependents. At all material times herein HMO Louisiana served as the claims and benefits administrator for health claims submitted under the Plan.

## Jurisdiction and Venue

4.

This Court has jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1332, 29 U.S.C. § 1132(e)(1) & (f). Venue is proper in this District because Defendant transacts its affairs and may be found in this District, and its improper conduct as alleged in this Complaint took place in this District. 29 U.S.C. § 1132(e)(2). Venue is also appropriate pursuant to 28 U.S.C. § 98(a).

## Background

5.

At all material times herein, Plaintiffs, Mark Guidroz and Ashley Guidroz, were covered and insured under the Plan. In addition, the minor children of Mark and Ashley Guidroz were qualified "dependents" as defined under the terms of the Plan.

6.

On July 19, 2018, the Guidroz's minor daughter was attending a youth summer camp in Northern California, and sustained serious injuries to her lower extremities as a result of a bicycle accident that occurred in a remote location. Attending onsite emergency medical authorities determined that because of the seriousness of her injuries, the minor child required a higher level of emergent medical care than could be provided at a local hospital. As a result, the onsite emergency medical authorities requested and ordered that the minor child be transported by air ambulance to a hospital approximately 75 miles away.

7.

Mark and Ashley Guidroz, who were both in New Orleans at the time, were not contacted or notified at this time regarding the onsite medical authorities' request that their minor daughter be transported by air ambulance.

8.

The requested emergency air ambulance services were provided by Reach Medical Holdings, LLC (d/b/a Calstar). Calstar invoiced Ashley Guidroz $69,782.18 for the air ambulance services provided to their minor daughter.

9.

Calstar eventually invoiced HMO Louisiana for these emergency air ambulance services. HMO Louisiana initially declined the claim because it determined that the services were not medically necessary.

10.

Following an administrative appeal, HMO Louisiana reversed its determination and found that the services *were* medically necessary. HMO Louisiana, however, agreed to pay only $2,797.26 towards Calstar's $69,782.18 invoice. Following a second appeal, HMO Louisiana eventually agreed to pay an additional $6,707.86 towards Calstar's invoice.

11.

HMO Louisiana has refused to pay any additional amounts towards Calstar's invoice, claiming that its invoiced amount exceeds the maximum allowable charge for similar services. Calstar has taken the position that its invoiced amount is authorized by the Airline Deregulation Act, 49 U.S.C. § 1371, *et seq.* Calstar, as a result, has demanded that Plaintiffs pay the balance of its invoice: $59,277.06.

12.

On November 2, 2018, Plaintiffs submitted a written request to HMO Louisiana as the Plan's administrator for a copy of all plan documents and other administrative materials relied upon in its benefits determination. HMO Louisiana has never responded to this request, and HMO Louisiana has never forwarded to Plaintiffs a copy of the requested plan documents or administrative record.

13.

Plaintiffs have exhausted all non-futile administrative remedies available under the terms of the Plan and ERISA.

## COUNT I

### Declaration of Rights to Benefits and/or Payment of Benefits

14.

The Plan "covers air Ambulance Services for Emergency Medical Conditions or when you are in a location that a ground ambulance cannot reach. For Emergency Medical Conditions, onsite police or medical authorities must request the air Ambulance Services for Your Plan to cover them."

15.

Here, the air ambulance services were covered benefits under the Plan because the Guidroz's minor daughter suffered an emergency medical condition and onsite medical authorities requested the air ambulance services.

16.

The Plan also provides that "Members receive **Network Benefits** when covered Emergency Medical Services are provided, regardless of the provider. (Emphasis added)." The

plan explains that "When a Member receives care from a Network provider, he will receive the highest level of Benefits on this plan."

17.

The Summary of Benefits for the Plan provides that a member will pay a 20% coinsurance for a network provider for emergency medical transportation,[1] with no stated "limitations" or "exceptions." The Plan further provides that "the Member will **not** have to pay the difference between the Allowable Charge and the provider's billed charge. (Emphasis added)."

18.

Plaintiffs have submitted substantial proof that the medical expenses incurred for emergent air ambulance services were medically necessary, and should have been paid by HMO Louisiana under the Plan as an in network benefit. As a network provider benefit, Plaintiffs should not have been required to pay more than a 20% coinsurance contribution, plus deductible, towards the Calstar invoice.

19.

Plaintiffs, accordingly, are entitled to a Judgment declaring that they are entitled to an award ordering HMO Louisiana to reimburse them for all unreimbursed benefits due under the terms of the Plan. 29 U.S.C. § 1132(a)(1)(B). Alternatively, Plaintiffs are entitled to a Judgment awarding them all unreimbursed benefits due under the terms of the Plan.

---

[1] The Plan alternatively provides that a participant would pay, at most, a 40% coinsurance contribution for a non-network provider.

## COUNT II

### Breach of Fiduciary Duty/Other Equitable Relief

20.

HMO Louisiana owed Plaintiffs a fiduciary duty to fairly and justly administer their claim for benefits and to pay all benefits due under the terms of the Plan. 29 U.S.C. § 1104, *et seq.* HMO Louisiana breached its fiduciary duty to Plaintiffs by arbitrarily and capriciously failing to pay all benefits due and owing despite having overwhelming and uncontroverted objective medical evidence that the emergent air ambulance services were medically necessary and were to be reimbursed as an in network provider. HMO Louisiana pursued this course of conduct in bad faith and for its own financial benefit, and knowing that it would cause harm to Plaintiffs. Plaintiffs, for their part, reasonably relied to their detriment on the understanding, expectation, and belief that the plan covered emergency medical and transportation services and that HMO Louisiana would fairly and honestly administer their claim and pay all benefits due under the Plan.

21.

As a result of HMO Louisiana's breach of its fiduciary and other duties, Calstar has demanded that Plaintiffs pay the balance of its invoice: $59,277.06. Plaintiffs are entitled to an award of all unreimbursed benefits due under the terms of the Plan, with interest, and all other equitable or remedial relief as the Court may deem appropriate. 29 U.S.C. §§ 1109(a) & 1132(a)(2).

## COUNT III

### Civil Penalties – Failure to Provide Plan Documents

22.

ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), provides for civil penalties for an administrator's failure to supply plan documents and benefits determination documents:

> **Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary** (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary **within 30 days after such request** may in the court's discretion **be personally liable to such participant or beneficiary in the amount of up to $110[2] a day from the date of such failure** or refusal, and the court may in its discretion order such other relief as it deems proper. (Emphasis added).

23.

ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), states that "the administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description . . . contract, or other instruments under which the plan is established or operated." Similarly, the Secretary of the U.S. Department of Labor prescribes that, in order to provide a full and fair review, the Plan must: "Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 CFR § 2560.503-1(h)(2)(iii). *See also* 29 CFR § 2560.503-1(m)(8) (Describing in detail all documents considered "relevant" to a claim for benefits).

---

[2] 29 CFR § 2575.502c-1 ("[T]he maximum amount of the civil monetary penalty established by section 502(c)(1) of the Employee Retirement Income Security Act of 1974, as amended (ERISA), is hereby increased from $100 a day to $110 a day.").

7

24.

On November 2, 2018, Plaintiffs submitted written request to HMO Louisiana requesting copies of all plan and other administrative documents relied on in denying their claim. To date, HMO Louisiana has failed to respond to this written request and they have otherwise failed to provide Plaintiffs with a copy of the Plan, or a copy of the administrative record, or <u>any</u> documents that they claim to have relied on in reaching any of the adverse benefits determinations or in denying the appeals.

25.

HMO Louisiana, accordingly, is liable for civil penalties in the amount of $110.00 for each day that it failed – and continues to fail – to provide Plaintiffs with copies of the requested Plan and claim documents.

**(Continued on Next Page)**

WHEREFORE, Plaintiffs, Mark and Ashley Guidroz, respectfully pray that their Complaint be deemed good and sufficient, and that Defendant, HMO Louisiana, Inc., be duly served and summoned with a copy of this Complaint, and it they be made to appear and answer same within the delays allowed by law, and that after all due and legal proceedings are had herein, for the reasons set forth herein, that there be Judgment entered in favor of Plaintiffs, Mark and Ashley Guidroz, finding and declaring that they are entitled to all benefits due under the terms of the plan, and an award of attorney's fees, civil penalties, costs, damages, and prejudgment and post-judgment interest until paid, and for all other legal and equitable relief that they may be entitled.

Respectfully submitted:

　　*/s/ Joseph S. Piacun*　　
JOSEPH S. PIACUN (25211)
Gennusa, Piacun & Ruli
4405 North I-10 Service Road, Suite 200
Metairie, Louisiana  70006-6564
Telephone: (504) 455-0442
Facsimile: (504) 455-7565
Email: jpiacun@gprlawyers.com
**Attorneys for Plaintiffs,**
**Mark and Ashley Guidroz**